FILED
2018 Mar-05 PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| LATESIA RANCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17-cv-00941-LSC |
| | ) | |
| BROOKDALE SENIOR LIVING | ) | |
| COMMUNITIES, INC. D/B/A | ) | |
| BROOKDALE SENIOR LIVING | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OF OPINION

Plaintiff Latesia Rancher ("Ms. Rancher") brings this action against Defendant Brookdale Senior Living Inc. ("Brookdale"), alleging that Brookdale violated her rights under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by discriminating against her on the basis of race and retaliating against her for engaging in a protected activity. Before this Court is Brookdale's motion compel arbitration. (Doc. 8.) For reasons explained more fully herein, the motion is due to be granted.

## I. Background[1]

Ms. Rancher is an African-American female who began working with Brookdale in April 2013. As part of its employee onboarding process, Brookdale requires all employees to agree to an E-Signature Agreement, in which the employee authorizes and agrees to use electronic signatures[2] instead of ink signatures on their employment forms. On April 3, 2013, Ms. Rancher executed the E-Signature Agreement. (Doc. 8-1, Ex. 1.)

As a condition of employment, Brookdale requires all employees to enter into an Employment Binding Arbitration Agreement ("Agreement"), which they electronically sign. (Doc. 8-1, Ex. 2.) The Agreement states that both Brookdale and Ms. Rancher "will be precluded from bringing or raising in court . . . any dispute" that could be brought under the Agreement. (Doc. 8-1, Ex. 2 at 7.) In the "Claims Covered" provision, it lists "claims for discrimination" which includes

---

[1] At the motion to dismiss stage, the Court must accept the plaintiff's version of the facts as true, and construe "the reasonable inferences therefrom . . . in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). The following facts are, therefore, taken from Plaintiff's allegations contained in his Complaint, and the Court makes no ruling on their veracity.

[2] Under Alabama law, an electronic signature has the same legal effect as a written ink signature. Ala. Code §8-1A-9 (2015).

racial discrimination as a listed item. (*Id.*) Additionally, the Agreement grants the arbitrator power to award remedies that a court would award for alleged violations and wrongdoings, including remedies under Title VII. (*Id.*) The Agreement also contains this provision:

> The parties agree that the costs of the AAA administrative fees and the arbitrator's fees and expenses will be paid for us initially, but as provided by statute or decision of the arbitrator.[3] In other words, all costs could after all is complete be paid by us or you, depending upon the outcome. All other costs and expenses associated with the arbitration, including, without limitation, the party's respective attorneys' fees, shall be borne by the party incurring the expense, unless provided otherwise by statute or decision of the arbitrator.

(*Id.* at 8.) The Agreement ends with this provision, just above the signature line:

> **By initialing the box below, you indicate your agreement to the terms set forth above…We both understand that by agreeing to the terms in this Procedure, both of us are giving up any constitutional or statutory right we may possess to have covered claims decided in a court of law before a judge or a jury.**

(*Id.* at 9 (bolded text in original.))

---

[3] The quoted language has poor grammatical structure. However, it is reproduced here exactly as it appears in the Agreement.

On April 4, 2013, Ms. Rancher also electronically signed Brookdale's Associate Handbook Receipt and Acknowledgement ("Acknowledgement") (Doc 8-1, Ex. 3.) The Acknowledgement included this provision: "I agree to Brookdale's Employment Binding Arbitration policy regarding any disputes that arise between Brookdale and me and I agree to arbitrate the dispute by a final binding arbitration." (*Id.*)

Following various incidents, Ms. Rancher filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 24, 2017. On March 8, 2017, the EEOC mailed Ms. Rancher a Notice of Right to Sue, and she timely brought suit on June 6, 2017. (Doc. 1.) Brookdale then filed its motion to stay proceedings and compel arbitration on July 17, 2017. (Doc. 8.)

## II. STANDARD OF REVIEW

The standard of review for a motion seeking to compel arbitration is analogous to a summary judgment motion. *See In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate") (citations omitted); *see also Fleetwood Enterprises, Inc.*

*v. Bruno*, 784 So. 2d 277, 280 (Ala. 2000). Where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," a court shall grant a motion for summary judgment. Fed. R. Civ. P. 56(a). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III. DISCUSSION

#### A. *Existence of Agreement to Arbitrate*

"The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). In the absence of "such an agreement, a court cannot compel the parties to settle their dispute in an arbitral forum." *Id.* (internal quotation marks and citations omitted). The Eleventh Circuit has consistently maintained that "*state law* generally governs whether an enforceable contract or

agreement to arbitrate exists." *Id.* (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (emphasis added)).

Under Alabama law, the movant must prove "the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce" in order to compel arbitration. *Regions Bank v. Neighbors*, 168 So. 3d 1, 2 (Ala. 2014) (citing *TranSouth Fin. Corp. v. Bell*, 739 So. 2d 1110, 1114 (Ala. 1999)). If the movant carries its burden, the non-movant must prove "that the supposed arbitration agreement is not valid or does not apply to the dispute in question." *Jim Burke Auto., Inc. v. Beavers*, 674 So. 2d 1260, 1265 n.1 (Ala. 1995).

Brookdale has met its burden of proving the existence of the contract calling for arbitration. It has submitted a copy of the agreement, which closes with an arbitration provision in bold, directly preceding the final signature line. The provision states that, by initialing, Ms. Rancher agrees to arbitrate, foregoing her rights to a judge or jury. The existence of the contract is not in dispute. Ms. Rancher acknowledges its existence and the fact that she signed it in her Response. (Doc. 17 at ¶ 1.) Because Brookdale has demonstrated the existence of the contract

calling for arbitration, the burden shifts to Ms. Rancher to show that the contract is invalid.

### B. *Validity of the Agreement to Arbitrate*

While large arbitration costs may preclude a plaintiff from vindicating her statutory rights, she must show more than a "risk" of incurring those costs. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-91 (2000); *see also Musnick v. King Motor Co. of Fort Lauderdale,* 325 F.3d 1255, 1260 (11th Cir. 2003) (holding that the party resisting arbitration in a Title VII claim must demonstrate that an arbitration agreement with a "loser pays" clause would likely be cost prohibitive).

Ms. Rancher contends that the arbitration agreement is invalid because it "denies and limits [her] statutory rights" by requiring her to pay all expenses of the arbitration, including the fees of the committee and Brookdale's attorneys' fees, were she not to prevail. (Doc. 17 at ¶ 6.) She describes the types of fees that she would potentially have to pay, but nowhere does she describe the amount of those fees, save that they would exceed the $400 filing fee of a court. (*Id.* at ¶ 11.) Under the reasoning in *Green Tree* and *Musnick*, she has not met her burden.

In *Green Tree*, the plaintiff argued that the arbitration agreement was invalid because it said nothing about the costs of the arbitration. 531 U.S. at 89. The Court

entertained the possibility that "the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 90. However, in the next sentence, it noted, "[b]ut the record does not show that Randolph will bear such costs if she goes to arbitration." *Id.* Randolph provided average filing fees and daily costs of arbitration from the American Arbitration Association, but made no showing that the AAA would arbitrate the claim or if she would be charged the fees she identified. *Id.* at 90 n. 6. The Court concluded that invalidating an agreement because of the "risk" that the plaintiff would have to pay high fees "would undermine the liberal federal policy favoring arbitration agreements." *Id.* at 91 (internal quotations and citations omitted).

Like the plaintiff in *Green Tree*, Ms. Rancher has failed to offer support that she would be responsible for prohibitively high arbitration costs. The Court in *Green Tree* found that the industry averages the non-movant offered were insufficient to invalidate the agreement, and Ms. Rancher has not even offered that much. She has provided no information on what arbitrating this case would cost, save that it would be more expensive than a $400 court fee. Without a showing of the burdensomeness of the costs, Ms. Rancher has only put forward the "risk" that

she would have to pay a high fee, which is insufficient to overcome the "liberal federal policy favoring arbitration agreements." *Id.*

In *Musnick*, the Eleventh Circuit held that *Green Tree*'s reasoning applies to Title VII claims. 325 F.3d at 1260. The plaintiff in *Musnick* contested the validity of the arbitration agreement because it contained a "loser pays" provision. *Id.* at 1257. Though the district court agreed with the plaintiff, the Eleventh Circuit reversed because *Green Tree* requires the likelihood—not the mere possibility—of prohibitive costs. *Id.* at 1258. By failing to introduce evidence of the prohibitive nature of the costs, Ms. Rancher has only argued for their possibility, which is insufficient under the holding in *Musnick*.

Ms. Rancher relies heavily on *Paladino* in her response to the motion to compel arbitration; however, it is not instructive. In *Paladino*, the plaintiff sued under Title VII, and the defendant moved to compel arbitration. *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1056 (11th Cir. 1998). The agreement required the parties to settle any claim by arbitration and only allowed the arbitrator to award damages for breach of contract claims. *Id.* Because the provision required the plaintiff to settle her Title VII claim in arbitration but did not allow the arbitrator to

award damages (i.e. "deprive[d] [the] employee of any hope of meaningful relief"), the court found the provision unenforceable. *Id.* at 1062.

The agreement in this case is nothing like the one in *Paladino*. The agreement Ms. Rancher signed states, "The arbitrator shall have the power to award all remedies that could be awarded by a court . . . in accordance with the governing and applicable substantive law, including, *without limitation, Title VII* . . . and all other applicable civil rights and employment laws . . ." (Doc. 8-1 at 8 ¶ g) (emphasis added). Where the agreement in *Paladino* expressly *limited* the types of damages the arbitrator could award, this agreement expressly *includes* the types of damages Ms. Rancher seeks. As such, *Paladino* has no bearing on this case.

### IV. CONCLUSION

Brookdale has proven that the parties voluntarily entered into an agreement to arbitrate all disputes, including Title VII claims and Ms. Rancher has not carried her burden of showing the agreement to be invalid. As such, Brookdale's motion to compel arbitration is due to be GRANTED. An Order consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on March 5, 2018.

/s/ L. Scott Coogler
L. Scott Coogler
United States District Judge

190685